
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

| | |
|---|---|
| CELDONIA CRUZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ELMER A. TOLIVER, )<br>)<br>and )<br>)<br>GENEVIEVE A. TOLIVER )<br>)<br>Defendants. ) | CIVIL ACTION NO.<br>5:04CV231-R |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Celdonia Cruz ("Ms. Cruz"), by counsel, hereby submits the following Memorandum in Opposition to the Motion to Dismiss of Defendants Dr. Elmer A. Toliver and Genevieve Toliver ("Defendants").

### INTRODUCTION

Ms. Cruz filed this Complaint on December 4, 2004, asserting that Defendants held her in a state of involuntary servitude in violation of the Victims of Trafficking and Violence Protection Act of 2000, the Peonage, Slavery and Trafficking in Persons Act, and the Thirteenth Amendment to the United States Constitution. Ms. Cruz also asserts that the Defendants' conduct constitutes fraud, intentional infliction of emotional distress, a breach of the parties' oral employment contract, and violation of federal and state wage and hour laws. On December 30, 2004, Defendants filed a motion to dismiss Ms. Cruz's Complaint. Defendants' motion, however, addresses only nine of the fifteen claims set forth in the Complaint. Defendants allege that Counts I, IV, V, VI, VII and IX arise from statutes that do not provide private rights of

action. Defendants also allege that Count X is barred by the Statute of Frauds, that Count XIII fails to state a claim for outrage, and that Count XIV (fraud) was not pled with sufficient particularity. For the reasons set forth below, Defendants' Motion to Dismiss should, with one narrow exception, be overruled.

## STATEMENT OF THE CASE

This action arises from the Defendants' virtual enslavement of Ms. Cruz for more than three years in their home in Paducah, Kentucky. Through the use of a human-trafficking network, the Defendants arranged to have Ms. Cruz transported from her home in the Philippines to their home in Paducah for the purpose of becoming their domestic servant. (Complaint ¶9.) Defendants paid a member of the network eight thousand dollars ($8,000) in consideration for the network acting as the Defendants' agent and recruiting and transporting Ms. Cruz to their home. (*Id.*) Through their agent, Enpang, Defendants falsely promised Ms. Cruz that she would be paid five hundred dollars ($500) per month to be a domestic servant for Defendants and their two children. (Complaint ¶10.) In reliance on Defendants' false promises, Ms. Cruz traveled to the United States and arrived in Paducah on or about June 15, 2001. (Complaint ¶11.)

The Defendants never paid Ms. Cruz the $500 per month she was promised. Rather, Defendants initially paid Ms. Cruz half of what she was promised (later increasing it to $300), and deducted from that amount so called "expenses" incurred as the result of Ms. Cruz's mere presence in the Defendants' house. (Complaint ¶¶12, 17.) In exchange for her meager wages, Ms. Cruz was illegally coerced into working approximately 18 hours per day, seven days a week, 52 weeks per year. (Complaint ¶14.) Defendants also routinely transported Ms. Cruz to Illinois where she was instructed to perform manual labor on the Defendants' farm. (Complaint ¶16.)

Defendants illegally coerced Ms. Cruz to remain in this condition of involuntary servitude through a carefully crafted scheme intended to cause Ms. Cruz to believe that she would be seriously harmed if she left the Defendants' employment. (Complaint ¶21.) Defendants' scheme involved refusing Ms. Cruz access to her own passport, telling Ms. Cruz she would be arrested if she left the house, threatening to accuse Ms. Cruz of stealing if she ever left the Defendants' employment, telling Ms. Cruz she could not leave the Defendants' employment for at least five years until she paid off the $8,000 Defendants paid to the human-trafficking network, and isolating Ms. Cruz from the outside world by limiting her access to neighbors and the telephone, and monitoring her telephone conversations. (Complaint ¶18.) Moreover, in a deliberate effort to exacerbate Ms. Cruz's isolation and economic dependence, Defendants refused to pay Ms. Cruz directly and wired her wages directly to the Philippines, leaving Ms. Cruz without any financial resources whatsoever. (Complaint ¶17.)

As a result of Defendants' illegal, coercive acts, Ms. Cruz remained in a condition of involuntary servitude for over three years in the Defendants' house. Ms. Cruz was eventually able to escape in September of 2004, and filed this action on or about December 4, 2004.

For the purposes of ruling on Defendants' Motion, the Court must assume that all of the foregoing allegations are true. With that assumption, and viewing the facts in a light most favorable to Ms. Cruz, it is clear that she has alleged facts that are sufficient to support the claims asserted. Therefore, Defendants' Motion to Dismiss should be overruled.

## ARGUMENT

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must treat all of the allegations in the Complaint as true and draw all reasonable factual inferences in favor of the plaintiff. *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001).

3

The court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Conley v. Goodson*, 355 U.S. 41, 45-46 (1957).

The facts as alleged by Ms. Cruz establish that she was illegally coerced into remaining in the Defendants' house as a domestic servant in violation of the Victims of Trafficking and Violence Protection Act of 2000 (the "Victims of Trafficking Act"), the Peonage, Slavery and Trafficking in Persons Act (the "Peonage Act"), and the Thirteenth Amendment to the United States Constitution (the "Thirteenth Amendment"). In addition, the facts support Ms. Cruz's claims for intentional infliction of emotional distress, fraud, and breach of contract. Defendants cannot establish that it would be impossible for Ms. Cruz to prove a set of facts in support of each claim asserted. Therefore, under the standard established by the United States Supreme Court in *Conley v. Gibson*, this Court should overrule Defendants' Motion to Dismiss.[1]

## I.     THE VICTIMS OF TRAFFICKING ACT PROVIDES A PRIVATE RIGHT OF ACTION.

Defendants moved to dismiss Counts I and VI on the grounds that the Victims of Trafficking Act does not provide a private right of action.[2] Defendants are mistaken. The Victims of Trafficking Act provides an express private right of action; accordingly, Defendants' Motion to Dismiss should be overruled.

---

[1] Defendants' motion contains a statement that Ms. Cruz's Complaint "is terminally defective and this Court should dismiss it . . . ." (Motion to Dismiss, p. 1.) This statement is inherently false, even if the specific arguments raised by Defendants had any merit. The Defendants' motion does not even address six of the fifteen claims asserted in the Complaint. Nonetheless, Defendants tendered an order which would dismiss the Complaint "in its entirety." Even in the highly unlikely event that the Court is convinced by each and every argument asserted in the motion, Defendants would still not be entitled to the relief set forth in the order they tendered; six claims would remain for the parties to litigate.

[2] Counts I, II, III, VI and VIII all arise under the Victims of Trafficking Act. Of these, however, Defendants moved only to dismiss claims I and VI.

## A.   Congressional findings under the Victims of Trafficking Act.

The purpose of the Victims of Trafficking Act is "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, *and to protect their victims.*" 22 U.S.C. §7101(a) (emphasis added). According to Congressional findings, approximately 50,000 women and children are trafficked into the United States each year. 22 U.S.C. §7101(b)(1). Women and girls are disproportionately the victims of human trafficking. "Traffickers lure women and girls into their networks through false promises of decent working conditions at relatively good pay as nannies...." 22 U.S.C. §7101(b)(4). Once the victims have been ensnared within the network, "[t]raffickers often make representations to their victims that physical harm may occur to them or others should the victim escape or attempt to escape. Such representations can have the same coercive effect on victims as direct threats to inflict such harm." *Id.* at (b)(7).

This is the exact situation in which Ms. Cruz found herself. Ms. Cruz, a female citizen of the Republic of the Phillipines, was targeted by the Defendants and their agent, Enpang, and lured to the United States with promises of payment of $500 per month for services as a nanny and domestic servant. (Complaint ¶10.) Based on the Defendants' false promises, Ms. Cruz came to the United States to work for the Defendants only to find that the pay was half of what she was promised. (Complaint ¶12.) In addition, Ms. Cruz was forced to perform domestic duties for approximately 18 hours per day, seven days per week, 52 weeks per year. (Complaint ¶14.) Moreover, the Defendants illegally coerced Ms. Cruz to remain as Defendants' nanny and domestic servant by withholding her passport, telling her she would be arrested if she left the house, threatening to accuse her of stealing if she left the Defendants, limiting Ms. Cruz's access to the outside world, and telling her she was not allowed to leave until after she worked for them

for five years. (*See* Complaint ¶18.) The Court must treat each and every one of these allegations as true, for the purpose of ruling on Defendants' motion.

**B.** **The Victims of Trafficking Act provides an express private right of action.**

Among the many Congressional findings included within the text of the Victims of Trafficking Act is the following:

> *Existing laws often fail to protect victims* of trafficking, and because the victims are often illegal immigrants in a destination country, they are repeatedly punished more harshly than the traffickers themselves. Additionally, *adequate services and facilities do not exist to meet victims' needs* regarding health care, housing, education, and legal assistance, which safely reintegrate trafficking victims into their home countries.

22 U.S.C. §7101(b)(17-18) (emphasis added). In addition, when Congress considered reauthorizing appropriations under the Victims of Trafficking Act in 2003, the United States House of Representatives Committee on International Relations stated:

> In the 3 years since enactment of the TVPA [Trafficking Victims Protection Act of 2000] the United States Government has developed a better understanding of the phenomenon of trafficking in persons and the Committee has been able to evaluate U.S. experience under the act and identify areas for improvements and modifications to the act. Based on this experience, H.R. 2620 strengthens the U.S. Government's ability to combat the worldwide scourge of trafficking in persons by enhancing provisions on prevention of trafficking, *protection of victims* of trafficking and prosecution of traffickers.

*House Report (International Relations Committee)*, No. 108-264 (Part I), September 5, 2003 (emphasis added).

In accordance with these findings, and in an effort to enhance the Victims of Trafficking Act's provisions protecting trafficking victims, Congress expressly created a civil right of action under the Act. *See Trafficking Victims Protection Reauthorization Act of 2003*, P.L. 108-193, §4(a)(4)(A), Dec. 19, 2003, 117 Stat. 2878, codified at 18 U.S.C. § 1595:

> An individual who is a victim of a violation of section 1589, 1590, or 1591 of this chapter may bring a civil action against the perpetrator in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. §1595. Thus, there is no merit to the Defendants' contention that "the Victims of Trafficking Act does not authorize private lawsuits based upon violations of the act." (Motion to Dismiss, pp. 2-3.) On the contrary, the Victims of Trafficking Act provides an *express* private right of action.

Moreover, Ms. Cruz specifically asserted Counts I and VI under the Victims of Trafficking Act. "Defendants' conduct constitutes Trafficking in Persons in violation of the Trafficking Victims Protection Act of 2000 . . . ." (Complaint ¶33.) The Victims of Trafficking Act is codified in part at 22 U.S.C. § 7101 *et seq.*, as referenced in Count I, and in part at 18 U.S.C. § 1590 *et seq.*[3] Regardless of *where* the civil remedies provision of the Victims of Trafficking Act is codified, Ms. Cruz clearly alleges in Count I that the Defendants' conduct constitutes a violation of the Victims of Trafficking Act. In addition, Count VI alleges that the Defendants violated a specific provision of the Act. Pursuant to the Federal Rules of Civil Procedure, Ms. Cruz must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. Both Count I and VI provide the Defendants with notice that Ms. Cruz is asserting these claims under the Victims of Trafficking Act based on the Defendants' conduct described within the Complaint. Accordingly, there is no basis for the Defendants' motion to dismiss Counts I and VI.[4]

---

[3] Count VI provides, "Defendants' conduct constitutes Document Servitude in violation of 18 U.S.C. §1592, for which Ms. Cruz has a private right of action." (Complaint ¶38.)

[4] Although a violation of 18 USC §1592, asserted in Count VI, is not specifically mentioned in the civil remedies provision in 18 U.S.C. §1595, pursuant to the plain language of the statute a claim for violation of §1592 can only be asserted in concert with a violation of another statute, including 18 U.S.C. §§1589 and 1590, both of which are specifically identified in the civil remedies provision. Cruz alleged violations of 18 U.S.C. §1589 in Count II, and 18 U.S.C. §1590 in Count III (Counts which Defendants do not seek to dismiss). Moreover, Cruz's claim in Count VI is inextricably connected to her claims in Counts II and III. Count VI is based on Defendants'

## II. THE COURT SHOULD DISMISS COUNTS IV AND VII WITHOUT PREJUDICE.

Counts IV and VII assert claims under 18 U.S.C. §§ 1584 and 241, respectively. The Defendants moved to dismiss these claims on the basis of a mere assertion that the statutes do not provide a private right of action. (With regard to Count IV, the Defendants did not even cite any law in support of their assertion.) Ms. Cruz, however, upon further research agrees that under the current state of the law these two Counts should be dismissed without prejudice. Although other courts have held a private cause of action exists under 18 U.S.C. §1584, the United States Court of Appeals for the Sixth Circuit has held that "§1584 does not provide for a private civil remedy." *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352 (6th Cir. 1996). In addition, Ms. Cruz recognizes that federal courts generally currently agree that no private right of action exists under 18 U.S.C. §241. Therefore, this Court should dismiss Counts IV and VII only, and without prejudice.

## III. AN IMPLIED RIGHT OF ACTION EXISTS UNDER THE PEONAGE ACT (COUNT V).

The United States Supreme Court, in *Cort v. Ash*, 422 U.S. 66 (1975), established the factors a Court should consider when determining whether an implied right of action exists under a federal statute:

    (1)    Is the plaintiff one of the class for whose special benefit the statute was enacted?

    (2)    Did Congress indicate any intent either to create or deny a remedy?

    (3)    Would implying a remedy for the plaintiff be consistent with the underlying purpose of the legislative scheme?

---

confiscation of her passport as part of their scheme to keep her in a state of involuntary servitude in violation of 18 U.S.C. §§1589 (Count II) and 1590 (Count III). Therefore, Cruz's private right of action under the Victims of Trafficking Act extends to Count VI.

> (4)     Would the cause of action be one traditionally delegated to
>          state law such that it would be inappropriate to imply a
>          federal remedy?

*Cabinet for Human Resources, Commonwealth of Kentucky v. Northern Kentucky Welfare Rights Association*, 954 F.2d 1179, 1182 (6th Cir. 1992) (citing *Cort v. Ash*, 422 U.S. 66 (1975)). "The 'central inquiry' is 'whether Congress intended to create, either expressly or by implication, a private cause of action.'" *Care Choices HMO v. Engstrom*, 330 F.3d 786, 789 (6th Cir. 2003) (*quoting Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979)). Based on the standard established by the United States Supreme Court and the Sixth Circuit, a private right of action exists under the Peonage Act. Therefore, Defendants' Motion to Dismiss should be overruled.

Ms. Cruz is clearly among those for whose special benefit the Peonage Act was enacted. The purpose of the Peonage Act is to implement the Thirteenth Amendment to the United States Constitution which provides:

> Section 1.  Slavery Prohibited.
>
> Neither slavery nor involuntary servitude, except as a punishment for crime whereas the parties shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
>
> Section 2.  Power to Enforce Article.
>
> Congress shall have power to enforce this article by appropriate legislation.

*See U.S. v. Gaskin*, 320 U.S. 527 (1944). Involuntary servitude is defined as "a condition of servitude in which the victim is forced to work for a defendant by use or threat of physical restraint or injury or by use of coercion through law or legal process." *United States v. Kozminski*, 487 U.S. 931, 952 (1988).

The specific section of the Peonage Act asserted in Count V is 18 U.S.C. §1581, which provides in pertinent part as follows: "Whosoever holds or returns any person to a condition of peonage, or arrests any person with the intent of placing him in or returning him to a condition of peonage, shall be fined under this title or imprisoned not more than 20 years, or both." "[P]eonage, however created, is compulsory service, involuntary servitude." *United States v. Reynolds*, 235 U.S. 133 , 144 (1914).

As detailed in the Complaint, Ms. Cruz was illegally coerced into involuntary servitude working approximately eighteen hours per day, seven days per week, 52 weeks per year for approximately fifty cents per hour. (*See* Complaint ¶¶14, 24.) In addition, the Defendants confiscated her passport, told her she would be arrested if she left the house, threatened to accuse her of theft if she left the employment of the Defendants, isolated her from the outside world, and monitored her telephone conversations. (Complaint ¶18.) The Defendants, therefore, forced Ms. Cruz to remain in a state of involuntary servitude by coercion through law or the legal process. Those, like Ms. Cruz, who have been illegally coerced to remain in a state of involuntary servitude, are the very people the Peonage Act was meant to protect. Indeed, it is hard to imagine who else the statute could be meant to protect.

Although §1581 does not expressly provide a civil remedy, "a court may imply a private civil cause of action if it determines that Congress, by implication, intended to create one." *Touche Ross & Co*, 442 U.S. at 569. Here, Congress intended to create such a remedy. The Peonage Act was enacted to further the purposes of the Thirteenth Amendment in abolishing involuntary servitude throughout the United States. *U.S. v. Gaskin*, 320 U.S. 527 (1944). Given the Thirteenth Amendment provides individuals with a Constitutional right to be free from involuntary servitude, it is logical to conclude that Congress intended to create a private remedy

under the very act passed to implement the Thirteenth Amendment. Without a civil remedy, the Thirteenth Amendment would remain only partially implemented. Victims, such as Ms. Cruz, who are able to escape from their captors would be left without a means to redress the violation of their Constitutional rights. This unjust result cannot be what Congress intended. Accordingly, the Court should find an implied right of action under the Peonage Act.

Furthermore, finding an implied right of action would be consistent with the purposes of the Act. As already stated, the purpose of the Peonage Act is to carry out the Constitution's abolition of involuntary servitude. A private right of action for involuntary servitude under §1581 would provide a victim with a means of protecting her Constitutional rights and would further deter potential offenders from engaging in the very conduct the statute prohibits. Therefore, finding an implied right of action under §1581 would be consistent with the purpose of the Act.

Finally, the cause of action asserted under the Peonage Act is not one traditionally delegated to state law. Congress recognizes that the problem of slavery and involuntary servitude, addressed in the Peonage Act, directly affects interstate and foreign commerce. "Trafficking for such purposes as involuntary servitude, peonage, and other forms of forced labor has an impact on the nationwide employment network and labor market." 22 U.S.C. §7101(b)(12). Given that Article I of the United States Constitution expressly provides Congress with the power to regulate interstate commerce, and given that Congress has found that involuntary servitude and peonage substantially affect the nationwide labor market, the implied right of action under the Peonage Act would be one traditionally delegated to *federal* law, not state law. Moreover, Defendants have not cited any law that would indicate that Kentucky law addresses involuntary servitude. (In fact, Defendants do not even attempt to analyze the

Complaint in light of the test prevailing in the Sixth Circuit, instead summarily claiming that no implied right of action exists.)

Taking the foregoing factors as a whole and considering the "central inquiry" of Congressional intent, Defendants' Motion to Dismiss should be overruled.

## IV. MS. CRUZ HAS A PRIVATE RIGHT OF ACTION UNDER THE THIRTEENTH AMENDMENT AND 42 U.S.C. § 1985.

The Defendants move to dismiss Count IX alleging that Ms. Cruz does not have a private right of action "directly under the Thirteenth Amendment." (*See* Motion to Dismiss, p. 4.) Defendants fail to recognize, however, that Ms. Cruz does not plead a claim "directly under the Thirteenth Amendment," but rather states a cause of action under 42 U.S.C. §1985(3). (Complaint ¶ 41.) However, "a purely private conspiracy to violate a plaintiff's Thirteenth Amendment right . . . [is] actionable under 42 U.S.C. §1985(3)." *Spectronics Coproration v. TCI/TKR of Jefferson County, Inc.., d/b/a TKR of Greater Louisville*, 17 F. Supp. 2d 669 (W.D. Ky. 1998) (*citing Griffin v. Breckinridge*, 403 U.S. 88 (1971)). Therefore, Defendants' Motion to Dismiss should be overruled.

To maintain a viable claim under 42 U.S.C. §1985(3), a plaintiff must allege (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes to a person or property or a deprivation of any right or privilege of a citizen of the United States. *Spectronics Corporation v. TCI/TKR of Jefferson County, Inc. d/b/a TKR of Greater Louisville*, 17 F. Supp. 2d 669, 670 (W.D. Ky. 1998) (*citing Johnson v. Hills and Dales General Hospital*, 40 F.3d 837, 839 (6th Cir. 1994)).

In the present case, Plaintiff alleged that "Defendants conspired with each other and with other members of their extended family residing in Chicago, Illinois" to illegally coerce Ms.

Cruz to remain in the Defendants' house as a domestic servant. (Complaint ¶¶18, 20.) Defendants' conduct as pled in the Complaint was clearly designated to deprive Ms. Cruz of protection under the laws. (Although not explicitly pled in the Complaint, it may be reasonably inferred from the factual allegations and the Congressional findings under the Victims of Trafficking Act that Defendants targeted Ms. Cruz because she is a woman. As Congress has found, human trafficking disproportionately affects women and girls.)

Ms. Cruz alleged multiple acts in furtherance of the Defendants' conspiracy including denying Ms. Cruz access to her passport, telling Ms. Cruz she would be arrested if she left the house, threatening to accuse Ms. Cruz of stealing if she ever left the Defendants, and isolating Ms. Cruz from the outside world. (Complaint ¶18.) Ms. Cruz also alleged that she was injured by the Defendants' conspiracy to violate her Thirteenth Amendment rights in that she was held in a state of involuntary servitude for over three years and illegally coerced into working approximately 18 hours per day, seven days a week, 52 weeks per year for approximately 50 cents per hour. (Complaint ¶¶ 1, 14, 24.) Accordingly, Ms. Cruz has alleged a viable claim under 14 U.S.C. §1985(3) and the Thirteenth Amendment. Defendants' Motion to Dismiss should be overruled.

## V.     MS. CRUZ PLED A COGNIZABLE BREACH OF CONTRACT CLAIM (COUNT X).

Under Kentucky law, courts find a valid and enforceable contract upon a showing of offer and acceptance, full and complete terms, and consideration. *Cantrell Supply, Inc. v. Liberty Mutual Insurance Company*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002). For the purpose of a motion to dismiss, the movants must establish that the plaintiff can prove no set of facts to support her breach of contract claim. *Conley*, 355 U.S. at 45-46. Defendants cannot satisfy this burden. Ms. Cruz alleges that she had a valid employment contract with the Defendants for five

hundred dollars ($500) per month and that Defendants breached this contract by paying her only half of the agreed-upon wages. Specifically, Ms. Cruz alleges that the Defendants extended an offer of employment to Ms. Cruz through their agent, Enpang, and that Ms. Cruz accepted that offer. (Complaint ¶10.) It is a well-settled principle of law "that a principal is bound by the contract of his agent when at the time it was made the agent acted within the limits of his express authority or the scope of his implied authority . . . ." *Dark Tobacco Growers' Co-op. Ass'n v. Garth,* 291 S.W. 367, 369 (Ky. 1927). In addition, the offer as extended by the Defendants was sufficiently detailed to satisfy the requirement that a contract embrace full and complete terms. The offer as accepted by Ms. Cruz included the services to be performed by Ms. Cruz, the salary to be paid to her for performing those services, and travel arrangements to Paducah. (Complaint ¶10.)

In addition, the agreement between the Defendants and Ms. Cruz was supported by mutual consideration. Consideration is defined as follows:

> A benefit to the party promising, or a loss or detriment to the party to whom the promise is made. Benefit, as thus employed, means that the promissor has, in return for his promise, acquired some legal right to which he would not otherwise have been entitled. And detriment means that the promisee has, in return for the promise, forborne some legal right which he otherwise had been entitled to exercise.

*Huff Contracting v. Sark,* 12 S.W.3d 704, 707 (Ky. Ct. App. 2000) (*citing Phillips v. Phillips,* 171 S.W.2d 458, 464 (Ky. 1943)). In the present case, the Defendants promised to pay Ms. Cruz $500 per month. In exchange, they received the benefit of Ms. Cruz working in their home as their domestic servant. Similarly, in exchange for Ms. Cruz's promise to become the Defendants' employee and work as their domestic servant, Ms. Cruz received the benefit of the legal right to $500 per month in wages as promised by the Defendants. Thus, pursuant to *Huff*

*Contracting,* the employment contract between the Defendants and Ms. Cruz, as pled in the Complaint, is supported by consideration and is enforceable.

In a vain attempt to bar Ms. Cruz's breach of contract claim, Defendants allege that the employment agreement was for a term of three to five years and thus barred by the Statute of Frauds. Defendants misconstrue Ms. Cruz's Complaint. Ms. Cruz does *not* allege that she had an employment contract with the Defendants for a fixed term of three to five years. Rather, she alleges that the Defendants stated "*if* Ms. Cruz worked for the Defendants for three years, she would not owe any money for the airline ticket . . . [and] *if* she worked for [the] Defendants for five years, Defendants would pay her an unspecified bonus and supply her with a return airline ticket to the Philippines." (Complaint ¶10) (emphasis added). Thus, Ms. Cruz alleges merely that the Defendants promised that she was entitled to bonuses if she worked for three to five years. The employment contract itself, as pled in the Complaint, however, did not specify a definite period of time for performance. (As previously noted, the Court must accept these allegations as true for the purpose of ruling on the motion.) "The general rule is that contracts for employment or other performance that is (sic) to begin within a year and is (sic) to continue for an indefinite, unspecified period are terminable by either party at any time and are held not to be within the one-year clause of the statute." *Buttorff v. United Electronic Laboratories, Inc.,* 459 S.W.2d 581, 585-86 (Ky. 1970). The Defendants, through their agent Enpang, offered to employ Ms. Cruz for $500 per month as a domestic servant. (Complaint ¶ 10.) The offer did not contain a term for a specific number of years. Upon Ms. Cruz's acceptance of the offer, an oral contract was formed for an unspecified period of time. Therefore, it was *possible* for the contract to be performed within one year. Pursuant to *Buttorff v. United Electronic Laboratories, Inc.,* Ms. Cruz's contract claim is therefore not barred by the Statute of Frauds.

## VI.  MS. CRUZ'S FRAUD CLAIM WAS PLED WITH SUFFICIENT SPECIFICITY (COUNT XIV).

Defendants have moved to dismiss Ms. Cruz's fraud claim, on the erroneous basis that it is not pled with sufficient particularity. In doing so, Defendants would have this Court consider the requirements of Fed. R. Civ. P. 9(b) outside of the general rule of notice pleadings provided in Fed. R. Civ. P. 8. Rule 9(b) cannot be considered in isolation. The Sixth Circuit Court of Appeals has held that Fed. R. Civ. P. 9 "does not mute the general principles set out in Rule 8." *Michaels Building Company v. Ameritrust Company*, 848 F.2d 674, 679 (6th Cir. 1988). "[I]t is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading fraud. This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules." *Id.* (*quoting 5 C. Wright & A. Miller*, Federal Practice and Procedure, Civil Section 1298, p. 407 (1969)). The Defendants concede that "the Complaint alleges that the misrepresentations occurred, and that Ms. Cruz relied to her detriment upon Enpang's false promises." (Motion to Dismiss, p. 6.) Defendants' sole argument for dismissing Ms. Cruz's fraud claim is that the claim "fails to allege *when* the misrepresentation purportedly happened." (*Id.*) (emphasis added). Fed. R. Civ. P. 9(b), however, does not require the level of detailed suggested by Defendants.

> [D]efendants border on urging that Rule 9(b) requires that the Plaintiff plead the *evidence* of the fraud. The rule, however, requires only that the circumstances of the fraud be pled with particularity, and not the evidence of the case. While circumstances may consist of evidence, the rule does not mandate the presentation of facts and evidence in a complaint.

*Michael Building Company*, 848 F.2d at 680, n. 9 (*quoting, inter alia,* 2 A. Moore's Federal Practice, Sect. 9.03 pp. 9-23 (2nd Ed. 1979) and C. Wright & A. Miller, Federal Practice and Procedure, Civil Sect. 1297, pp. 403-04 (1969)) (emphasis in original).

Ms. Cruz alleged that "[r]easonably relying to her detriment upon these false promises, Ms. Cruz agreed to come to America. Using the airline ticket supplied by Enpang and as instructed by him on behalf of Defendants, Ms. Cruz flew from Manila to Los Angeles, then to St. Louis, and then to Paducah, Kentucky, where she arrived on June 15, 2001." (Complaint ¶11.) Based on the facts as alleged in the Complaint, Defendants are on notice that the fraudulent statements were made sometime before or in June of 2001. (At this point in time, only the Defendants know when they contacted the trafficking network in order to procure their servant.) The Complaint need only provide the Defendants with fair notice to enable them to "prepare an informed pleading responsive to the specific allegations of fraud." *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634, 643 (6th Cir. 2003). The facts as alleged by Cruz are more than sufficient to provide the Defendants with notice to enable them to respond to Ms. Cruz's fraud claim.[5]

## VII. MS. CRUZ PLED A COGNIZABLE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT XIII).

Under Kentucky law, a "plaintiff must establish the following elements for her claim of intentional infliction of emotional distress: (1) the defendants' conduct must be intentional or reckless; (2) said conduct is outrageous and intolerable in that it offends against generally accepted standards of decency and morality; (3) a causal connection exists between the defendants' conduct and plaintiff's emotional distress; and (4) the emotional distress must be severe." *Pennington v. Dollar Tree Stores, Inc.*, 104 F. Supp. 2d 710, 715 (E.D. Ky. 2000) (*quoting Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999)) (internal quotations omitted).

The Defendants' only contention with Ms. Cruz's claim for intentional infliction of emotional distress is with the fourth and final element of the claim. Defendants contend that

---

[5] Ms. Cruz notes that the Defendants did not, in the alternative, move for a more definite statement, indicating a desire to avoid the consequences of their behavior, rather than a need for greater understanding of the allegations.

"[b]ecause the complaint fails to adequately allege facts tending to establish that Ms. Cruz's emotional distress is 'severe,' Count XIII is facially deficient and should be dismissed." (Motion to Dismiss, p. 7.) As the following demonstrates, Ms. Cruz pled facts that satisfy the fourth element of the claim. (The Complaint clearly states facts sufficient to state a claim under all four elements of the cause of action. Ms. Cruz addresses herein only the fourth element, as Defendants apparently concede the first three are adequately pled.)

The same four-part test under the *Pennington* case is set forth in Defendants' memorandum. Clearly, the fourth element requires only that the emotional distress be "severe." Nonetheless, Defendants contend that Ms. Cruz failed to state a claim because she did not allege "any physical manifestations of emotional distress, and there is no allegation that Ms. Cruz required or sought the services of mental health professionals." (Motion to Dismiss, p. 7.) Neither physical manifestation nor seeking the services of a mental health professional is a required element of the claim, and the Defendants' suggestion to the contrary is disingenuous. Ms. Cruz specifically pled in her Complaint that the "Defendants' conduct described herein caused and continues to cause Ms. Cruz severe emotional distress." (Complaint ¶29.) That is all that is required at this stage of the proceedings.

It is quite telling that in seeking dismissal of the tort of outrage, the Defendants cite authority to the effect that "[t]he tort is not available for 'petty insults, unkind words and minor indignities.'" (Motion to Dismiss, p. 7.) Ms. Cruz's Complaint alleges that Defendants participated in a severe form (as defined by Congress) of human trafficking, an activity which Congress found to be "an evil requiring concerted and rigorous action" and a modern-day manifestation of slavery. *See* 22 U.S.C. § 7101(b). In an effort to illegally coerce Ms. Cruz to remain in a condition of involuntary servitude for a period of over three years, the Defendants

denied her access to her passport, told her she would be arrested if she left the house, threatened to accuse her of theft if she left the employment of the Defendants, isolated her from the outside world, and monitored her telephone conversations. (Complaint ¶18.) At the same time, they forced her to work 18 hours per day, 7 days per week, 52 weeks per year, for approximately 50 cents per hour. (Complaint ¶14, 24.) The Defendants' conduct is the very conduct the tort is intended to redress, "truly outrageous [and] intolerable" conduct that is unacceptable in a civilized society. *See Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000). That Defendants could imply such conduct amounts to "petty insults, unkind words and minor indignities" speaks volumes about their attitude toward Ms. Cruz. In light of this defense, it is little wonder they treated Ms. Cruz as if she were their property.

Defendants cannot establish that Ms. Cruz is unable to prove any set of facts in support of her outrage claim. Therefore, Defendants' Motion to Dismiss should be overruled.

### CONCLUSION

For these reasons, the Court should dismiss without prejudice Counts IV and VII of the Complaint, and should otherwise overrule the Defendants' Motion to Dismiss.

Respectfully submitted,

DINSMORE & SHOHL LLP
Colin H. Lindsay
Holly C. Wallace

1400 PNC Plaza
500 W. Jefferson Street
Louisville, Kentucky 40202
(502) 540-2300
(502) 585-2207 (fax)
COUNSEL FOR CELDONIA CRUZ

## CERTIFICATE OF SERVICE

I hereby certify a true and accurate copy of the foregoing was mailed, first class, postage prepaid, this 21st day of January, 2005 to:

J. David Boswell
Boswell Sims & Vasseur, PLLC
425 South Sixth Street
Paducah, KY 42002-1265
Co-Counsel for Defendants

Douglas Farnsley
Stites & Harbison, PLLC
400 W. Market Street, Suite 1800
Louisville, KY 40202-3352
Co-Counsel for Defendants

_____
Counsel for Plaintiff

97232v2
30762/11

## STATEMENT OF AUTHORITIES

### FEDERAL CASES

*Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352 (6th Cir. 1996)......................................8

*Cabinet for Human Resources, Commonwealth of Kentucky v. Northern Kentucky
Welfare Rights Association*, 954 F.2d 1179 (6th Cir. 1992).........................................9

*Care Choices HMO v. Engstrom*, 330 F.3d 786 (6th Cir. 2003) ........................................9

*Conley v. Goodson*, 355 U.S. 41 (1957) ............................................................................4

    *Conley*, 355 U.S. at 45-46........................................................................................13

    *Conley*, 355 U.S. at 47 ...............................................................................................7

*Cort v. Ash*, 422 U.S. 66 (1975)........................................................................................8

*Kostrzewa v. City of Troy*, 247 F.3d 633 (6th Cir. 2001) ..................................................3

*Michaels Building Company v. Ameritrust Company*, 848 F.2d 674 (6th Cir.
1988) .........................................................................................................................16

*Pennington v. Dollar Tree Stores, Inc.*, 104 F. Supp. 2d 710 (E.D. Ky. 2000)................17

*Spectronics Coproration v. TCI/TKR of Jefferson County, Inc.., d/b/a TKR of
Greater Louisville*, 17 F. Supp. 2d 669 (W.D. Ky. 1998) ..........................................12

*Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979) .............................................9

*U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634 (6th Cir.
2003) .........................................................................................................................17

*U.S. v. Gaskin*, 320 U.S. 527 (1944).................................................................................9

    *U.S. v. Gaskin*, 320 U.S. 527 (1944).......................................................................10

*United States v. Kozminski*, 487 U.S. 931 (1988)...............................................................9

*United States v. Reynolds*, 235 U.S. 133 (1914)...............................................................10

## STATE CASES

*Buttorff v. United Electronic Laboratories, Inc.*, 459 S.W.2d 581 (Ky. 1970) .................15

*Cantrell Supply, Inc. v. Liberty Mutual Insurance Company*, 94 S.W.3d 381, 384
    (Ky. Ct. App. 2002) ...........................................................................................................13

*Dark Tobacco Growers' Co-op. Association v. Garth*, 291 S.W. 367 (Ky. 1927) ............14

*Huff Contracting v. Sark*, 12 S.W.3d 704, 707 (Ky. Ct. App. 2000).................................14

*Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000) ...........................................................19

## FEDERAL STATUTES

42 U.S.C. §1985(3) ...............................................................................................................12

22 U.S.C. §7101(a) .................................................................................................................5

22 U.S.C. § 7101(b) ..............................................................................................................18

22 U.S.C. §7101(b)(1) ............................................................................................................5

22 U.S.C. §7101(b)(12) ........................................................................................................11

22 U.S.C. §7101(b)(17-18) .....................................................................................................6

22 U.S.C. §7101(b)(4) ............................................................................................................5

    *Id.* at (b)(7) ......................................................................................................................5

22 U.S.C. § 7101 *et seq*..........................................................................................................7

14 U.S.C. §1985(3) ...............................................................................................................13

18 U.S.C. §1581....................................................................................................................10

18 U.S.C. §1584......................................................................................................................8

18 U.S.C. §§ 1584 and 241 .....................................................................................................8

18 U.S.C. §1589......................................................................................................................7

18 U.S.C. §1590......................................................................................................................7

18 U.S.C. §1592.................................................................................................7

18 U.S.C. § 1595...............................................................................................6

   18 U.S.C. §1595...............................................................................................7

18 U.S.C. §241 .................................................................................................8

Fed. R. Civ. P. 8 ...............................................................................................16

Fed. R. Civ. P. 9 ...............................................................................................16

Fed. R. Civ. P. 9(b) ..........................................................................................16

Fed. R. Civ. P. 12(b)(6).......................................................................................3

H.R. 2620 ........................................................................................................6

*Trafficking Victims Protection Reauthorization Act of 2003*, P.L. 108-193,
   §4(a)(4)(A), Dec. 19, 2003, 117 Stat. 2878 ..................................................6

## MISCELLANEOUS

*House Report (International Relations Committee)*, No. 108-264 (Part I)..........................6